IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

VANESSA BISHOP )
)
)
v. ) No. 3:13-0956
)
NANCY A. BERRYHILL )
    Acting Commissioner of )
    Social Security[1] )

## M E M O R A N D U M

Plaintiff filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying her claim for a period of disability and Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket Entry No. 16),[2] to which Defendant has responded. Docket Entry No. 17. Plaintiff has also filed a subsequent reply to Defendant's response. Docket Entry No. 18. This action is before the undersigned for all further proceedings pursuant to the consent of the parties and order of the District Judge in accordance with 28 U.S.C. § 636(c) (Docket Entry Nos. 20-21).

Upon review of the administrative record as a whole and consideration of the parties' filings, Plaintiff's motion is **DENIED** and the decision of the Commissioner is **AFFIRMED**.

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

[2] By order entered January 22, 2014, Plaintiff was allowed thirty (30) days to file a motion for judgment on the record. Docket Entry No. 15. Plaintiff instead filed only a "brief in support of motion for judgment on the administrative record" (Docket Entry No. 16), which the Court will treat as both a motion and memorandum.

## I. INTRODUCTION

Plaintiff filed an application for a period of disability and DIB on September 8, 2010. *See* Transcript of the Administrative Record (Docket Entry No. 14) at 54.[3] She alleged a disability onset date of August 15, 2010. AR 54.[4] Plaintiff asserted that she was unable to work due to heart problems, breathing problems, stomach problems, brain lesion, depression, asthma, ulcer, migraines, memory loss, and pain on both side of the body. AR 63, 67.

Plaintiff's applications were denied initially and upon reconsideration AR 54-55. Pursuant to her request for a hearing before an administrative law judge ("ALJ"), Plaintiff appeared with counsel and testified at a hearing before ALJ Elizabeth P. Neuhoff on January 15, 2013. AR 29. On March 1, 2013, the ALJ denied the claim. AR 11-13. On July 5, 2013, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision (AR 1-3), thereby making the ALJ's decision the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on March 1, 2013. AR 11. Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

---

[3] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding page number(s) as numbered in large black print on the bottom right corner of each page. All other filings are hereinafter referenced by the abbreviation "DE" followed by the corresponding docket entry number and page number(s) where appropriate.

[4] This was later amended to October 1, 2010. AR 14.

2. The claimant has not engaged in substantial gainful activity since October 1, 2010, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

\*\*\*

3. The claimant has the following severe impairments: asthma, major depressive disorder, generalized anxiety disorder, and alcohol abuse in current remission (20 CFR 404.1520(c)).

\*\*\*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\*\*\*

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can have no work around pulmonary irritants; limited to unskilled work consisting of simple tasks and instructions; can maintain concentration, persistence and pace for periods of at least two hours at a time; occasionally engage in contact with the public; can handle occasional changes in the workplace routine setting or location.

\*\*\*

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

\*\*\*

7. The claimant was born on April 9, 1961 and was 49 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563)

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR part 404, Subpart P, Appendix 2)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the regional and national economy that claimant can perform (20 CFR 404.1569 and 404.1569(a))

\*\*\*

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 15, 2008, through the date of this decision (20 CFR 404.1520(f)).

AR 16-23.

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (i) whether the decision of the Commissioner is supported by substantial evidence, and (ii) whether the Commissioner made legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially similar to that in *Richardson*).

The Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See, e.g.*, *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g.*, *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing an entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 432(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), and 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's

age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the Social Security Administration, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the 12-month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are sufficiently severe as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such showing results in an automatic finding of disability that ends the inquiry. *See Combs, supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work.

*Combs, supra.* "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1). In determining a claimant's RFC, for purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra.*

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 402 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). To rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that

the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir. 1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

### C. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step five of the five-step process. The ALJ found that Plaintiff met the first two steps, but determined at step three that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ found that Plaintiff was unable to perform past relevant work as a nurse aid due to its requirements of medium exertion and semi-skilled work. The ALJ found at step five that Plaintiff could find gainful employment as an assembler, finisher, or hand packager, all of which exist in significant numbers in the regional and national economy. AR 16-23.

### D. Plaintiff's Assertions of Error

Plaintiff argues that the ALJ erred by (1) improperly evaluating the opinions of two consultative examiners; (2) improperly evaluating her recurrent diverticulitis; (3) improperly evaluating her credibility; and (4) failing to comply with SSR 00-4p. DE 16 at 1-2. Plaintiff

therefore requests that this case be reversed and benefits awarded, or, alternatively, remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration. *Id*. at 24-25.

Sentence four of 42 U.S.C. § 405(g) states the following:

The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g), 1383(c)(3). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala,* 25 F.3d 316, 318 (1994). The Court addresses each of Plaintiff's assertions of error below.

**1. The opinions of the consultative examiners.**

Plaintiff argues that the ALJ erred by rejecting the opinions of Dr. Lauture Massac and Dr. Michael Loftin, two psychological consultative examiners who provided the only opinions from examining sources regarding Plaintiff's alleged mental impairments, and instead giving more weight to opinions from non-examining consultants. DE 16 at 12-13. Plaintiff argues that the ALJ improperly relied on evidence of her minimal activities of daily living to discount Dr. Massac's opinion, and improperly discredited Dr. Loftin's opinion based on Plaintiff's subjective complaints instead of clinical findings. DE 16 at 15-16.

Dr. Massac opined that Plaintiff suffered from mild to moderate limitations in short-term memory capacity, moderate impairment in her ability to sustain concentration, and was in the

low average range of intellectual functioning. AR 268. He also remarked that Plaintiff "shows evidence of a marked impairment in her social relating." AR 270. However, Dr. Massac subsequently completed a medical source statement ("MSS") regarding Plaintiff's mental restrictions in which he opined that none of Plaintiff's functional capacities were affected by any mental condition. AR 271-72. Dr. Massac's sole comment on the MSS noted that Plaintiff "appears to be impacted by major depressive disorder. She reports sleeping a lot and [being] unable to do any chores in her house." AR 272.

In discounting Dr. Massac's opinion, the ALJ explained that there was no evidence that Plaintiff suffered any significant social problems, observing that Plaintiff "lives with her husband, talks to her daughter often, drives, and makes microwavable foods, soups or sandwiches." AR 21. Plaintiff argues that these minimal social activities do not disprove that she suffers from social impairment, an assertion with which the undersigned does not necessarily disagree. However, Dr. Massac's general statement that Plaintiff "shows evidence of a marked impairment in her social relating," which was based solely on Plaintiff's description of her symptoms and not on a review of any medical records, is negated by his subsequent conclusion that Plaintiff's impairment does *not* affect her ability to interact with supervisors, co-workers, or the public. AR 272. Plaintiff points to no evidence to refute this finding or establish that Plaintiff suffers from any functional restrictions due to her alleged social impairment. *See* 20 C.F.R. § 404.1520a(c)(2) ("We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis."). Indeed, Dr. Loftin similarly found that Plaintiff suffers

from overwhelmingly mild limitations with respect to her social condition. AR 319.[5] Therefore, to the extent that the ALJ erred by relying in part on minimal daily activities to discount Dr. Massac's opinion, such error is harmless.

Dr. Loftin's report similarly concluded that Plaintiff was in the average range of intellectual functioning, but additionally found evidence of "marked and severe impairment" in her short-term memory capabilities, moderate to marked impairment in her ability to sustain concentration, and mild impairment with respect to social relating and long-term memory functioning. AR 317. Dr. Loftin completed an MSS that reflected these findings. AR 318-20. Notably, Dr. Loftin was not provided any medical records to review. AR 308.

The ALJ provided a more detailed explanation for rejecting Dr. Loftin's assessment, including Plaintiff's performance in response to testing:

> [D]r. Loftin's opinion was based on the claimant's subjective reports and not objective clinical findings. While the claimant's test scores on the Wechsler Memory Scale ... were lower than expected, they fell within the average to low average range. On mental status examination, the claimant was able to recall all three named items immediately. In serial 3s, she completed four out of six iterations successfully. Additionally, the GAF scores of both [Dr. Loftin and Dr. Massac] are inconsistent with the claimant's activities of daily living. Furthermore, it is apparent that the claimant provided conflicting information to both consultative examiners.

AR 22. Plaintiff disagrees with the ALJ's characterization of "average" test scores and notes that "some of the auditory process scores" obtained by Dr. Loftin were lower than average. DE 16 at 16. This does not, however, refute Dr. Loftin's unequivocal conclusion, based on both his testing and independent examination, that Plaintiff's intellectual functioning is within the "average range." AR 317-18. Indeed, Dr. Jenaan Khaleeli, a non-examining consultant who reviewed

---

[5] Specifically, Dr. Loftin found that Plaintiff exhibited "mild" impairment in three out of four categories of social functioning, and "moderate" impairment in her ability to respond appropriately to usual work situations and changes in a routine work setting. AR 319.

Plaintiff's medical records, specifically opined that the average intellectual functioning results obtained from Dr. Loftin's testing "do[] not indicate marked limitations in memory." AR 340.

Moreover, the ALJ correctly noted that Plaintiff provided inconsistent reports to each of the consultative examiners. While she advised Dr. Massac in January of 2011 that she drinks six beers per day (AR 267), she denied any alcohol use during her subsequent visit with Dr. Loftin just a few months later, going so far as claiming that she had not consumed alcohol since 2000. AR 309.[6] She also provided considerably different accounts regarding the frequency of alleged panic attacks to the examiner, ranging from two to three episodes per day (AR 268) to none at all. AR 310. These are not insignificant discrepancies, especially in light of Dr. Loftin's statement that his conclusions were "[b]ased on the claimant's available history and ... presentation during [her] psychological evaluation[.]" AR 318. Plaintiff's alcohol consumption is especially relevant to Dr. Loftin's finding that she "showed evidence of marked and severe impairment in her short-term memory" (AR 317), because, as noted by Dr. Khaleeli, any opinion regarding memory limitations would be substantially impacted by knowledge of the subject claimant's consumption of six alcoholic beverages per day. AR 340.

Plaintiff additionally suggests that the ALJ committed reversible error by assigning little weight to the opinions of Dr. Massac and Dr. Loftin "in favor of the opinions of sources who have never examined or even seen [Plaintiff]." DE 16 at 12-13. Plaintiff cites no authority to support this position, however, and the Court notes that the Sixth Circuit has held that an ALJ may reasonably accord greater weight to the opinion of a non-examining consultant than one provided by a treating physician. *See Brooks v. Comm'r of Soc. Sec.,* 531 F. App'x. 636, 642 (6th

---

[6] The Court also notes that during a separate consultative examination with Dr. Donita Keown the day before her interview with Dr. Massac, Plaintiff provided yet another account, reporting that she "occasionally" consumes alcohol. AR 277.

Cir. 2013) (observing that "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants ... may be entitled to greater weight than the opinions of treating or examining sources") (citing SSR 96-6p); *see also Benson v. Colvin*, No. 7:13-022, 2014 WL 3919577, at *9 (E.D. Ky. Aug. 11, 2014) ("[I]t is not a *per se* error to give more weight to the opinion of a non-examining physician than that given to an examining or treating physician's opinion."). Plaintiff's argument in this regard is thus unavailing.

In evaluating the opinions of non-treating medical sources, the ALJ is required to consider several factors, including the supportability and consistency of the opinions. *See* 20 C.F.R. § 404.1527(c). The ALJ determined that the opinions of Drs. Massac and Loftin were not supported by the evidence of record, and concluded that Dr. Loftin's opinion was inconsistent with his own testing. AR 21-22. The ALJ additionally discounted these opinions based on the extremely contradictory reports Plaintiff provided to each examiner, which was appropriate. *See* C.F.R. § 404.1527(c)(6) ("When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion."). Accordingly, the Court finds that substantial evidence supports the ALJ's conclusions regarding these opinions.

**2. Evidence of diverticulitis.**

Plaintiff argues that the ALJ failed to discuss the evidence of her hospitalization due to diverticulitis, and claims that the ALJ erred in finding that the effect of this condition on her ability is minimal. DE 16 at 19-20. Plaintiff's argument is unpersuasive.

Plaintiff notes that she has been hospitalized multiple times for diverticulitis, yet fails to provide any evidence that this condition is disabling. *See Krakow v. Comm'r of Soc. Sec.*, No. 13-14388, 2015 WL 1301300, at *10 (E.D. Mich. Mar. 23, 2015) ("[S]imply because

plaintiff suffers from certain conditions or carries certain diagnoses does not equate to disability[.]"). This is critical, as it is Plaintiff's burden to "prove the existence *and severity of limitations* caused by her impairment[.]" *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (emphasis added). For example, Plaintiff points to her treatment at Horizon Medical Center in October of 2010 to support her argument, but her discharge note indicates that this acute episode was resolved with antibiotics and that she was "feeling significantly better ... and stable to be discharged home." AR 424. Plaintiff experienced an additional acute episode in November of 2011, which was again resolved with antibiotics. AR 541. Plaintiff was discharged from the hospital two days later following "marked improvement in her symptoms." AR 541.

Plaintiff also cites a CT scan performed in June of 2012, yet the findings of this study actually revealed improvement in Plaintiff's condition, with a "mild degree of recurrent diverticulitis in this same sigmoid segment without complicating factors." AR 575. Plaintiff again experienced acute diverticulitis episodes in October, November, and December of 2012, but such episodes were treated with antibiotics and a recommended dietary change. AR 532, 620. A CT scan from October of 2012 demonstrated "absolute complete resolution of diverticulitis" (AR 488), which further undermines Plaintiff's claim that her condition is disabling.

It is undisputed that Plaintiff suffers from diverticulitis, yet notwithstanding Plaintiff's contention otherwise, the mere diagnosis of a condition "says nothing about the severity of the condition." *Higgs*, 880 F.2d at 863. Plaintiff faults the ALJ for failing to include any limitations in the RFC pertaining to diverticulitis, but fails to identify an opinion indicating that diverticulitis causes any functional limitations. She instead asks the Court to reverse the Commissioner's decision based on the ALJ's refusal to approximate the severity of this condition, which the Court declines to do. *See Finch v. Comm'r of Soc. Sec.*, No. 07-13796, 2008 WL 4449857, at *1

(E.D. Mich. Sept. 30, 2008) (holding that the Court will not entertain a claimant's invitation to speculate regarding the severity of a diagnosis); *see also Flowers v. Comm'r of Soc. Sec.*, No. 14-12449, 2015 WL 4274961, at *4 (E.D. Mich. July 14, 2015) (declining to speculate as to the possible limitations related to a claimant's neck condition). The ALJ provided an adequate discussion in determining that Plaintiff's diverticulitis does not represent a severe impairment, with references to both objective medical findings and the opinion of a consultative examiner. AR 16-17. The Court therefore finds that substantial evidence supports this determination.

**3. Credibility determination.**

Plaintiff argues that the ALJ erred by discounting Plaintiff's credibility based on her receipt of unemployment insurance benefits since her receipt of such benefits was due to financial strain and not reflective of her ability to work. DE 16 at 21-22. Plaintiff also cites a memorandum purportedly from Chief Administrative Law Judge Frank A. Cristaudo noting that a claimant "can qualify for Social Security disability benefits even though he or she remains capable of performing some work." *Id.* at 21.[7]

Plaintiff's argument is misplaced for multiple reasons. First, it is well-established that applications for unemployment and disability benefits are "inherently inconsistent" because "[t]here is no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [she] is ready and willing to work." *Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801-02 (6th Cir. 2004) (internal citation and quotations omitted); *see also Villarreal v. Comm'r of Soc. Sec.*, No. 2:13- 15197, 2014 WL 6750327, at *7 (E.D. Mich. Nov. 30, 2014) ("[The

---

[7] The Court is unable to examine the actual document because Plaintiff fails to provide a valid citation to the alleged memorandum.

claimant] applied for both jobs and unemployment benefits after his alleged onset date—representing that he was ready, willing, and able to work—which is obviously not consistent with his allegations of disabling pain."); *Siler v. Astrue*, No. 11-391, 2012 WL 2603656, at *13 (E.D. Ky. July 5, 2012) ("When a claimant files for unemployment, [she] is stating that [she] is ready, willing and able to work ... Yet, when a claimant files for disability benefits, [she] is stating that [she] is unable to work[.]") (internal citations omitted). Plaintiff cites nothing that supersedes such judicial precedent.

Additionally, the ALJ did not, as Plaintiff suggests, discount her credibility based on her receipt of unemployment benefits. The ALJ instead properly considered such evidence as part of his overall analysis:

> The claimant filed for and received unemployment benefits from the [first] quarter of 2011 through the [second] quarter of 2012. The claimant testified that she looked for work during this time, and she further admitted that she would have worked if she were offered a job. *While this fact alone is not enough to refute a claim of disability,* it does tend to demonstrate that the claimant believed that she was capable of working, which is more than would be expected of a person alleging disabling functional limitations.

AR 20-21 (emphasis added). Plaintiff's attempt to mischaracterize the emphasis that the ALJ placed on her receipt of unemployment benefits is therefore rejected.

Finally, the ALJ provided a detail explanation of the *additional* reasons for discounting Plaintiff's credibility, which included conflicting statements to the consultative examiners regarding her daily activities, the frequency of alleged panic attacks, and the amount of alcohol she consumes on a daily basis. AR 21. As previously discussed, Plaintiff informed Dr. Loftin that she had not consumed alcohol in over a decade (AR 309), but told Dr. Massac just months earlier that she consumed six beers per day. AR 267. Plaintiff also advised Dr. Massac that she

received food stamps (AR 267), but denied receiving such benefits during her hearing before the ALJ. AR 42-43. The ALJ thus clearly provided sufficient support for his determination.

The Sixth Circuit has held that an ALJ's credibility determination is "virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal citation and quotations omitted). As long as the determination is supported by substantial evidence, it must be "accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)). Substantial evidence supports the ALJ's determination of Plaintiff's credibility in the instant case, and it is therefore affirmed.

**4. Vocational expert testimony.**

Plaintiff finally argues that the ALJ erroneously adopted testimony from the vocational expert ("VE") that conflicted with the Dictionary of Occupational Titles ("DOT"). DE 16 at 22-23. Specifically, Plaintiff claims that all of the jobs offered by the VE as viable options for employment involved a "reasoning level" of two, while Plaintiff's RFC reflects a "reasoning level" of only one. *Id*. Plaintiff also argues that there is a conflict between the VE's testimony and the DOT, and that the ALJ violated SSR 00-4p by failing to procure an explanation from the VE for this discrepancy. *Id*. at 24.

Plaintiff's argument involves the nonexertional limitation contained in the assigned RFC that restricts Plaintiff to "unskilled work consisting of simple tasks and instructions." AR 18. During the hearing, the ALJ posed a hypothetical to the VE that included this limitation, to which the VE replied that Plaintiff would be able to perform multiple jobs despite this restriction, including "assembler, small products," "finisher," and "packager, hand." AR 47-48. However,

each of these positions entails a reasoning level of two, which is defined in the DOT as an ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." DE 16 at 23. Therefore, Plaintiff argues, the level two reasoning requirements preclude work due to her restriction to simple tasks and instructions. *Id*.

The Court agrees that the "reasoning level" requirements of the three jobs identified by the VE technically exceed Plaintiff's RFC. However, based on relevant case law, the Court finds that any error committed by the ALJ in this regard is harmless. In response to an identical argument, the Sixth Circuit noted that there is "no authority for the proposition that jobs requiring reasoning levels two or three are inconsistent as a matter of law with a limitation to simple work." *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x 434, 446 (6th Cir. 2011) (internal quotations omitted). In that case, the Sixth Circuit rejected the subject claimant's argument by explaining that although the Commissioner relies on information available from the DOT in making a determination as to disability, the regulations "do not obligate [the ALJ and consulting vocational experts] to rely on the [DOT's] classifications," thus there is "no precedent that requires the Commissioner to align DOT 'reasoning levels' with RFC classifications." *Id*. Such reasoning was affirmed in a subsequent decision, in which the Sixth Circuit held that a discrepancy between a limitation requiring only simple tasks and the DOT reasoning levels "is not the type of actual or apparent conflict that necessitates a resolution under SSR 00-4p." *Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 420 (6th Cir. 2014).

Here, Plaintiff does not claim that she would be unable to perform the jobs identified by the VE, but instead argues for reversal of the Commissioner's decision based on an alleged violation of SSR 00-4p. However, the ALJ asked the VE if his testimony was consistent with the

DOT (AR 49), thus fulfilling her obligation to inquire about any inconsistencies under SSR 00-4p. *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 508 (6th Cir. 2013) (the ALJ's duty under SSR 00-4p "is satisfied if he or she asks the VE whether his or her testimony is consistent with the DOT") (citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006)). Counsel for Plaintiff did not question the VE regarding any inconsistencies between the VE's testimony and the DOT during the hearing, and the ALJ was under no additional obligation to identify such inconsistencies. *See id.* ("The ALJ is not required to affirmatively conduct an independent investigation into the testimony of witnesses to determine if they are correct.") (internal quotations omitted). Therefore, to the extent that the ALJ violated SSR 00-4p, the Court finds that such error is harmless.

## V. CONCLUSION

For the above stated reasons, Plaintiff's motion for judgment on the administrative record (DE 16)[8] is DENIED. An appropriate Order will accompany this memorandum.

BARBARA D. HOLMES
United States Magistrate Judge

---

[8] *See* n.2, *supra*.